IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff-Respondent,

v.                                          CIV 15-0767 JAP/KBM
                                          CR  13-1139 JAP

ALBERTO SANCHEZ,

    Defendant-Movant.

## PROPOSED FINDINGS
## AND
## RECOMMENDED DISPOSITION

**THIS MATTER** comes before the Court on Defendant/Movant's (hereinafter "Defendant") Motion to Vacate, Set Aside or Correct Sentence Pursuant to 28 U.S.C. § 2255, filed on August 31, 2015. *Doc. 65*.[1] The Honorable James A. Parker referred this matter to me on September 3, 2015, to conduct hearings, if warranted, including evidentiary hearings, and to perform any legal analysis required to recommend to the Court an ultimate disposition of the case. *CIV 15-0767 JAP/KBM, Doc. 4.* Having considered the parties' submissions, the relevant law, and the record in this case, the Court recommends that the claims raised in Defendant's § 2255 motion be denied and that this case be dismissed with prejudice. The Court finds that an evidentiary hearing is unnecessary, because Defendant's motion and the record of the case conclusively establish that Defendant is entitled to no relief.  *See* 28 U.S.C. § 2255(b) (a court must

---

[1] Unless otherwise noted, all referenced documents are from Defendant's Criminal Case, CR 13-1139 JAP.

1

hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.")

## I.    Background

On April 9, 2013, Defendant was charged by Indictment with being a felon in possession of a firearm and ammunition. *Doc. 1*. Thereafter, Magistrate Judge Alan Torgerson issued a Writ of Habeas Corpus Ad Prosequendum for Temporary Custody of Defendant, *Doc. 7*, and, on July 26, 2013, Attorney Cliff McIntyre was appointed to represent Defendant. *Doc. 16.* On January 27, 2014, Mr. McIntyre filed a Motion to Suppress[2] on Defendant's behalf. *Docs. 28, 29.* After a hearing, Senior District Judge Parker issued a Memorandum Opinion and Order denying the Motion to Suppress on February 21, 2014. *Doc. 34.* Shortly thereafter, Defendant changed his plea and pled guilty to the Indictment at a hearing before Judge Parker on February 26, 2014. *Doc. 38.* A signed plea agreement between Defendant and the United States was filed that same day. *Doc. 39.*

Prior to sentencing, Defendant filed a Motion for Dismissal of Counsel, asking the Court to dismiss Mr. McIntyre as his counsel. *Doc. 41*. After a hearing, the Court granted that motion and appointed Todd Hotchkiss to represent Defendant. *Docs. 44, 45*. Then, on July 19, 2014, Mr. Hotchkiss filed a Motion to Withdraw and for Appointment of New Counsel, *Doc. 48*, and Judge Parker granted that motion as well, appointing Michael Alarid, Jr. to represent Defendant. *Docs 50, 54*.

---

[2] That same day, Mr. McIntyre also filed an Amended Motion to Suppress, which superseded the earlier motion. *See Doc. 29.* For ease of reference, the Court refers to this Amended Motion as the "Motion to Suppress."

2

On September 25, 2014, while Mr. Alarid represented Defendant, Judge Parker sentenced Defendant to a term of imprisonment of 86 months to be followed by a three-year term of supervised release and a $100 Special Penalty Assessment. *Doc. 62.*

On August 31, 2015, Defendant filed his § 2255 Motion, seeking the following relief: "Downward Departure based on Illegal Search & Seizure Illegal Stop; Reversal of Conviction; Withdrawal of Plea." *Doc. 65* at 16.

## II.   Discussion

Defendant contends, in Ground One, that Mr. McIntyre was ineffective by failing to provide him will adequate legal assistance, failing to adequately investigate the case, failing to counter police procedure and action regarding law enforcement driving his car back to his residence, failing to provide sufficient proof that he did not commit the offense of trafficking as alleged by the Government, failing to show how the items seized were inadmissible under the doctrine of the fruit of the poisonous tree, and failing to show that the punishment must fit his alleged offense. *Doc. 65* at 6. In Ground Two, Defendant asserts that the Government committed "prosecutorial misconduct as it pertains to Defendant's Fourteenth Amendment Violations of Due Process." *Id.* at 8. He argues that "unlike the State who suppressed all the evidence that derived from the search of the vehicle that defendant was occupying and led to the charge of felon in possession of a firearm as a result of an illegal search and seizure, the Federal Government chose to pursue the charge." *Id.*

In response, the United States contends that Defendant's claims are procedurally barred because he agreed, in his plea agreement, to waive collateral attack to his conviction and sentence, except as to counsel's ineffective assistance in negotiating or

entering the plea and waiver. *Doc. 72* at 4. Alternatively, the United States submits that Defendant's claims fail on the merits. *Id.* at 10-18.

In *United States v. Hahn*, 359 F.3d 1315 (10th Cir. 2004), the Tenth Circuit set out a three-step analysis for reviewing the enforceability of a waiver of appellate rights:

> (1) whether the disputed appeal falls within the scope of the waiver of appellate rights; (2) whether the defendant knowingly and voluntarily waived his appellate rights; and (3) whether enforcing the waiver would result in a miscarriage of justice.

*Id.* at 1325.

Here, the plea agreement unequivocally states, under the heading "Waiver of Appeal Rights," that Defendant "agrees to waive any collateral attack to the Defendant's conviction and any sentence, including any fine, pursuant to 28 U.S.C. § § 2241 or 2255, or any other extraordinary writ, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver." *Doc. 39* at 8. In *United States v. Cockerham*, 237 F.3d 1179 (10th Cir. 2001), the Tenth Circuit squarely addressed the enforceability of waivers of § 2255 claims, concluding that a "waiver of collateral attack rights brought under § 2255 is generally enforceable where the waiver is expressly stated in the plea agreement and where both the plea and the waiver were knowingly and voluntarily made." *Id.* at 1183.

With respect to Defendant's "prosecutorial misconduct" claim, the basis for which is apparently the Federal Government's pursuit of criminal charges against him where the State Court allegedly suppressed evidence against him, the Court finds that such a claim, as unmeritorious as it appears, falls squarely within the scope of Defendant's wavier of post-convictions rights. Accordingly, the waiver is enforceable with respect to Ground Two subject to a determination, made hereinafter, that the waiver was

knowingly and voluntarily made. Defendant's ineffective assistance of counsel claims require a bit more consideration.

The plea agreement provides for the waiver of § 2255 claims only to the extent that they do not relate to "counsel's ineffective assistance in negotiating or entering this plea or this waiver." *See Doc. 69* at 8. This exemption mirrors the Tenth Circuit's finding in *Cockerham* that the waiver of postconviction rights is unenforceable as to this species of ineffective assistance of counsel claims. As the court held in *Cockerham*, a "plea agreement waiver of postconviction rights does not waive the right to bring a § 2255 petition based on ineffective assistance of counsel claims challenging the validity of the plea or the waiver." *Id.* at 1187. The court explained that the nature of ineffective assistance claims must be addressed on a case-by-case basis. *Id.* at 1188. Thus, the Court must examine Defendant's ineffective assistance claims to determine whether they are, in fact, within the scope of his waiver of § 2255 rights.

### A. Scope of Defendant's § 2255 Claims

Upon examination, the Court finds that Defendant's ineffective assistance claims relate to Mr. McIntyre's investigatory efforts and his legal arguments to the Court, principally in Defendant's Motion to Suppress. These claims do not go to the validity of the plea agreement itself. Indeed, Defendant does not even broach the topic of Mr. McIntyre's representation during the negotiation or entry of his plea agreement, and he does not assert, as he must for a claim under *Cockerham's* waiver exception, that he would not have pled guilty absent his attorney's ineffectiveness. Likewise, Defendant does not set forth any facts to suggest how Mr. McIntyre's purported inadequacies may have affected the plea that was negotiated. Even construing his assertions broadly,

Defendant's claims simply may not reasonably be characterized as attacks on the validity of his plea. As such, the Court concludes that, like his "prosecutorial misconduct" claim, Defendant also waived the right to bring these challenges so long as he did so knowingly and voluntarily.

### B.  Knowing and Voluntary Waiver

Although Defendant does not contend that his agreement to the plea and waiver was either unknowing or involuntarily, the Court, nevertheless, considers two factors: (1) whether the language of the plea agreement states that defendant entered into the agreement knowingly and voluntarily, and (2) whether there was an adequate Federal Rule of Criminal Procedure 11 colloquy. *See United States v. Hahn*, 359 F.3d 1315, 1325 (10th Cir. 2004).

Defendant's plea agreement outlined his rights, including his right to plead not guilty and to have a trial by jury, and explained that if he pled guilty to the Indictment, he would be giving up those rights. *Doc. 39* at 2. The agreement also provided that Defendant was admitting the essential facts making him guilty of the charge of being a felon in possession of a firearm and ammunition and that his signature on the plea agreement constituted his acknowledgment that he was pleading guilty because he was, in fact, guilty of the offense charged. *Id.* As to his waiver of appellate rights, the agreement indicated that Defendant "knowingly" waived those rights. *Id.* at 8. In conjunction with the waiver of appeal rights, the agreement explicitly included the waiver of collateral attacks pursuant to § 2255, except as to ineffectiveness in negotiating or entering the plea or waiver.

> Additionally, the agreement provided as follows:
>
> Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats or promises (other than the promises set forth in this agreement and any addenda). There have been no promises from anyone as to what sentence the Court will impose.

*Id.* at 9.

By signing the agreement, Defendant agreed that he "carefully discussed every part of th[e] agreement with [his] attorney," that he both understood and voluntarily agreed to its terms, and that his attorney had advised him "of the consequences of entering into this agreement." *Id.* at 10. Similarly, counsel certified, by his signature, that he had "carefully discussed every part of th[e] agreement with [his] client" and that "[t]o [his] knowledge, [his] client's decision to enter into this agreement [was] an informed and voluntary one." *Id.*

At the time of his plea hearing, Mr. McIntyre advised the Court that he had read the plea agreement to Defendant through the screen at the courthouse, that Defendant had time to "contemplate" the agreement and that he agreed to it. *Doc. 69* at 4. Nevertheless, Judge Parker opted to take up other matters prior to Defendant's plea colloquy in order to allow Defendant ample time to read the agreement for himself. *Id.* at 5. During his plea colloquy, Defendant advised Judge Parker, under oath, that he had read and understood all provisions of the agreement and that he had conferred with his counsel about those provisions. *Id.* at 8.

Specifically, Defendant indicated that he understood that he had the right to plead not guilty and to go to trial. *Id.* at 8-9. He stated that he understood that if he went

to trial he would have the right to confront and cross-examine the government's witnesses, to subpoena witnesses to testify on his behalf, and to refuse to testify or to take the stand and testify if he so chose. *Id.* at 9. He also acknowledged his understanding that, if he went to trial, he could not be convicted unless the jury unanimously agreed that the government had proven his guilt beyond a reasonable doubt. *Id.*

Judge Parker asked Defendant if anyone had threatened him or tried to force him to enter into the plea agreement, and he responded, "No, Your Honor." *Id.* at 9. Judge Parker also inquired whether anyone had made any promises to him other than those set forth in the agreement, and Defendant again responded, "No, Your Honor." *Id.* at 10. Defendant advised the Court that he was pleading guilty of his own free will. *Id.*

Although Judge Parker did not ask Defendant specifically about his waiver of § 2255 rights, he did inquire as to his understanding of his waiver of appeal rights, referring to Paragraph 17 of that agreement. *Id.* at 15. Defendant told Judge Parker that he understood that he was waiving his right to appeal his conviction and sentence, including the denial of his motion to suppress. *Id.* Defendant also assured the Court that he had no questions regarding his waiver of rights, which given their inclusion in the agreement's paragraph-17 discussion of appeal rights, also encompassed his post-conviction rights. *Id.* at 15-16.

Finally, when asked whether he fully understood all the terms of his agreement, he assured Judge Parker that he did. *Id.* at 15. He also assured Judge Parker that those terms were acceptable to him. *Id.* at 16. Ultimately, Judge Parker made a finding that

Defendant "knowingly, voluntarily, and intelligently entered a plea of guilty" to the charge in his Indictment. *Id.* at 17.

In light of the language of Defendant's plea agreement and the statements made and understanding expressed at his plea colloquy, the Court finds that Defendant entered the plea and waived both his appellate and post-conviction rights knowingly and voluntarily.

### C. Miscarriage of Justice

In *Hahn*, the Tenth Circuit reasoned that the enforcement of a waiver might constitute a miscarriage of justice under four scenarios: (1) reliance by the court upon an impermissible factor, such as race; (2) ineffective assistance of counsel in negotiating the waiver; (3) a sentence that exceeds the statutory maximum; or (4) a waiver that is otherwise unlawful. *Hahn*, 359 F.3d at 1327. As to the final scenario, a waiver would only be invalidated if enforcement would "seriously affect [] the fairness, integrity or public reputation of the judicial proceedings." *Id.* at 1329.

Defendant does not argue that any of these scenarios exist or that enforcement of the waiver of his post-conviction rights might otherwise constitute a miscarriage of justice. First, there is nothing in the record to suggest, and Defendant has not submitted any evidence to establish, that the Court relied upon an impermissible factor, such as race, at any time during the disposition of his criminal case. Second, Defendant does not contend or present evidence that Mr. McIntyre was ineffective in negotiating the waiver or that the waiver was unlawful. Finally, Defendant does not argue and the record does not suggest that the sentence imposed by Judge Parker exceeded the statutory maximum. Judge Parker found, relying upon the Presentence Report, an

9

offense level of 25, a Criminal History Category of VI, and a guideline imprisonment range of 110 to 120 months. *Doc. 70* at 4. Defendant's counsel at the time of sentence, Mr. Alarid, concurred with that finding. *Id.* After a motion by Defendant for a downward variance of 24 months, Judge Parker imposed a sentence of 86 months, which fell below the low end of the guideline range. *See id.*; *Doc. 62*.

Simply put, none of the four *Hahn* scenarios exist here, and enforcing the waiver of Defendant's § 2255 rights will not result in a miscarriage of justice.

### III. Conclusion

For all of these reasons, the Court finds that Defendant's claims are within the scope of his waiver of § 2255 rights, that Defendant entered his plea and waived his post-conviction rights knowingly and voluntarily, and that enforcement of his waiver will not result in a miscarriage of justice. Because the Court can resolve Defendant's § 2255 claims on the basis of an enforceable waiver, it need not reach the merits of those claims.

Wherefore,

**IT IS HEREBY RECOMMENDED** that Defendant's § 2255 Motion be denied and that his claims be dismissed with prejudice.

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

_____
UNITED STATES CHIEF MAGISTRATE JUDGE